T.C. Memo. 1999-194


UNITED STATES TAX COURT


GEORGE COLONEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23087-97.                    Filed June 16, 1999.


On the facts, <u>Held</u>: (1) P may not deduct gambling
losses in excess of amounts allowed by R; (2) P's deduction
for State income taxes is limited to the amount of New York
State income tax withheld by P's employer in 1994; and (3)
R's determination that there is an accuracy-related penalty
due from P under sec. 6662(a), I.R.C., for the 1994 taxable
year is sustained.


<u>Edmund J. Mendrala</u>, for petitioner.

<u>Timothy V. Mulvey</u>, for respondent.

MEMORANDUM OPINION

NIMS, Judge: Respondent determined the following deficiency
and accuracy-related penalty with respect to petitioner's Federal
income taxes as follows:

| Year | Income Tax Deficiency | Penalty Sec. 6662(a) |
|------|------|------|
| 1994 | $39,792 | $6,921 |

Unless otherwise indicated, all section references are to
sections of the Internal Revenue Code in effect for the years in
issue. All Rule references are to the Tax Court Rules of
Practice and Procedure. All dollar amounts are rounded to the
nearest dollar.

After concessions made by petitioner, the issues for
decision are: (1) Whether petitioner has substantiated alleged
gambling losses over the amount already allowed by respondent,
entitling him to deduct such losses against his unreported
gambling winnings of $25,309; (2) whether petitioner is entitled
to deduct certain expenses claimed on Schedule C of his 1994
Federal income tax return; and (3) whether petitioner is liable
for an accuracy-related penalty under section 6662(d).

This case was submitted fully stipulated. The stipulation
of facts and the attached exhibits are incorporated herein by
this reference. Petitioner resided in Fort Lauderdale, Florida,
when the petition was filed.

## Background

On Schedule C of petitioner's 1994 Federal income tax return, petitioner listed his principal business or profession as "consulting", and indicated that he is a cash receipts and disbursements method taxpayer.

In the statutory notice of deficiency, respondent made the following adjustments regarding petitioner's 1994 taxable year:

| | |
|---|---:|
| Exemption for daughter | $2,450 |
| Unreported gambling winnings | 25,309 |
| Schedule C expenses | 107,850 |
| Self-employment tax deduction | (2,684) |
| Itemized deductions | 2,204 |
| Deduction for exemptions | 1,813 |
| Total adjustments | 136,942 |

Petitioner was not entitled to claim an exemption for his daughter on his 1994 Federal income tax return.

## Gambling Activity

During the 1994 taxable year, petitioner received gambling winnings as follows:

| | |
|---|---:|
| New York Racing Association | $14,510 |
| Yonkers Raceway | 5,370 |
| MGM Grand Hotel & Theme Park | 11,745 |
| Boardwalk Regency Corporation | 1,668 |
| Total | 33,293 |

However, petitioner reported only $7,984 of gambling winnings ($25,309 less than what should have been reported) and deducted $7,894 in gambling losses on Schedule A of his 1994 Federal income tax return. Respondent allowed petitioner a gambling loss of $7,984 and does not dispute the $90 difference.

Petitioner produced the following evidence to establish unreported gambling losses: (1) 83 Yonkers Raceway tickets (Race Tickets) with an original date of April 2, 1994, and (2) a copy of a Complaint filed in 1995 by Trump Plaza Associates d/b/a Trump Plaza Hotel & Casino (TPA Complaint) against petitioner in the Superior Court of New Jersey for his failure to make good on $124,400 in checks payable to "T.P.A.", which were returned by the bank stamped "insufficient funds."  These checks had been delivered by petitioner in payment of a Trump Plaza statement of petitioner's account, which reflected the following charges:

| Date | Amount |
|------|--------|
| May 5, 1995 | $51,400 |
| May 19, 1995 | 23,000 |
| May 19, 1995 | 50,000 |

The TPA Complaint alleges that petitioner made an application for credit with Trump Plaza Associates, which was approved March 13, 1992.  Petitioner's credit record, which was attached as an exhibit to the TPA Complaint, reveals the following extensions of credit to petitioner:

| Date | Time | Amount |
|------|------|--------|
| Mar. 13, 1992 | 12:45 a.m. | $25,000 |
| May 29, 1992 | 12:00 a.m. | 50,000 |
| Feb. 14, 1993 | 6:00 p.m. | illegible |
| July 26, 1994 | 8:50 p.m. | 50,000 |
| July 26, 1994 | 10:00 p.m. | 100,000 |

Schedule C Expenses

Petitioner claimed the following expense deductions on Schedule C of his 1994 Federal income tax return:

| | |
|---|---|
| Supplies expense | $6,500 |
| Taxes & licenses | 49,000 |
| Travel | 16,500 |
| Meals and entertainment | 14,400 |
| Other expenses | 21,450 |
| Total | 107,850 |

Petitioner has produced a New York Statement of Income Tax Adjustment for 1994 (New York income tax adjustment) and an undated, handwritten New York State Estimated Income Tax Payment Voucher for the 1994 taxable year (Estimated Income Tax Voucher) in connection with the amount claimed as a deduction for State income taxes. The New York income tax adjustment shows that petitioner estimated his 1994 New York State income tax liability to be $25,000 when he submitted Form IT-370, Application for Automatic Extension of Time to File for Individuals, and had $2,610 withheld in New York State income tax for the 1994 taxable year which respondent has allowed as an itemized deduction on Schedule A of petitioner's 1994 Federal income tax return. The New York State Department of Taxation and Finance determined that petitioner made an overpayment of $27,610 for the 1994 taxable year but applied the overpayment to other liabilities.

Petitioner has submitted copies of his 1994 American Express Card statements to establish travel, meals, and entertainment expenses.

## Discussion

I.   Gambling Losses

The first issue is whether petitioner is entitled to deduct alleged gambling losses, over the $7,984 already allowed by respondent, against his unreported gambling winnings of $25,309. Petitioner argues that although he failed to report gambling winnings of $25,309 for the 1994 taxable year, he incurred sufficient gambling losses during that year to offset his unreported gambling winnings pursuant to section 165(d). Petitioner has submitted 83 Race Tickets in the aggregate face amount of $12,790 and a copy of the TPA Complaint to establish unreported Casino gambling losses of at least $50,000. Respondent asserts that the evidence submitted by petitioner is insufficient to substantiate petitioner's claimed gambling losses.

Section 165(a) allows a deduction for losses sustained during the taxable year and not compensated for by insurance or otherwise. Section 165(d) provides: "Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions."  Under section 1.165-10, Income Tax Regs., gambling losses are limited to the extent of gains from such transactions during the taxable year.  The amount of petitioner's gambling losses is a question of fact to be determined from the entire record.  See Green v. Commissioner, 66

T.C. 538, 545 (1976).  The burden lies with petitioner to prove with competent evidence the fact and amount of gambling losses, if any.  See Rule 142(a).

Parimutuel tickets carry little, if any, evidentiary weight where no corroboration is offered to show that each and every ticket was a losing ticket purchased by petitioner.  See Woosley v. Commissioner, T.C. Memo. 1982-316; Scoccimarro v. Commissioner, T.C. Memo. 1979-455.  In Scoccimarro v. Commissioner, supra, we held that parimutuel tickets by themselves were insufficient to prove that the taxpayer had sustained gambling losses.  We stated that we had

> no way of knowing whether petitioner purchased these tickets or received them from acquaintances and friends at the track or acquired them by resorting to the time-honored technique of 'stooping'; i.e., stooping down and picking up the discarded stubs of disheartened bettors.  [Id.]

Similarly, we have no way of determining in this case whether petitioner had in fact sustained losses at the Yonkers Raceway.  Petitioner has failed to keep adequate records of his winnings and losses and has not produced any evidence to corroborate his assertion that all the Race Tickets represent

losses sustained by him.  Like the taxpayer in <u>Scoccimarro v.</u> <u>Commissioner</u>, <u>supra</u>, petitioner could have received the Race Tickets from friends or acquired them by stooping.

Furthermore, the TPA Complaint does not establish Casino gambling losses in the amount of at least $50,000.  A copy of petitioner's credit record, attached to the TPA Complaint, shows that at 8:50 P.M., on July 26, 1994, Trump Plaza Associates advanced $50,000 to petitioner on his line of credit.  On that same night at approximately 10:00 P.M., Trump Plaza Associates advanced an additional $100,000 to petitioner.  Petitioner asserts that his credit record proves that he suffered Casino gambling losses in the amount of $50,000 within 70 minutes.

We disagree.  The credit record, without further explanation, merely indicates that Trump Plaza Associates extended credit to petitioner totaling $150,000 on July 26, 1994. Petitioner has offered nothing to support the assertion that the use of the proceeds resulted ultimately in losses.  It is perfectly possible that the use of the credit line resulted in net winnings, or in net losses in an amount less than, but not all of, the entire line of credit, but the 3 items on the 1995 statement of account indicate to us that petitioner's 1994 $150,000 line of credit had been satisfied by some means by the time the 3 additional extensions of credit were made by Trump Plaza Associates in 1995.  It is therefore not possible to

establish what petitioner's net gambling gain or loss position at Trump Plaza Associates was at the close of his 1994 taxable year. Therefore, petitioner has not shown that he incurred Casino gambling losses in the amount of $50,000.

Accordingly, we hold that petitioner is not entitled to deduct gambling losses over the $7,984 already allowed by respondent.

II.  Schedule C Expenses and Other Adjustments

The second issue is whether petitioner is entitled to deduct certain expenses claimed on Schedule C of his 1994 Federal income tax return.  As noted above, petitioner claimed expenses on Schedule C totaling $107,850.  Respondent has fully disallowed the Schedule C expenses, arguing that petitioner has failed to substantiate these expenses pursuant to sections 162 and 274(d).

Deductions are a matter of legislative grace and petitioner has the burden of proving his entitlement to them.  See, e.g., Deputy v. du Pont, 308 U.S. 488, 493 (1940).  Petitioner has produced no evidence in connection with the deductibility of $6,500 of "supplies" expenses, and $21,450 of "other expenses". We therefore uphold respondent's disallowance of these expenses.

Petitioner claims $49,000 of expenses for "Taxes & licenses".  Section 164(a)(3) allows a deduction for State income taxes paid during the taxable year.  Petitioner has produced an

undated, handwritten Estimated Income Tax Voucher for the 1994 taxable year and a New York income tax adjustment statement to substantiate his State income tax deduction.

As previously noted, the New York income tax adjustment shows that petitioner estimated his New York State income taxes to be $25,000 when he submitted Form IT-370, and had $2,610 withheld in New York State income tax for the 1994 taxable year. The Estimated Income Tax Voucher states that petitioner made an estimated New York State income tax payment of $35,000. However, the Estimated Income Tax Voucher lacks credibility because petitioner has not produced a check or other evidence of actual payment, and the amount shown thereon is inconsistent with the amount shown on the New York income tax adjustment.

We uphold respondent's determination that petitioner is entitled to deduct, as an itemized deduction, only $2,610 which is attributable to New York State income tax withheld because this amount constituted payments of income tax made in 1994. Petitioner has not shown that the $25,000 attributable to estimated tax payments submitted with Form IT-370 was paid in 1994.

Lastly, petitioner claims $16,500 in travel expenses and $14,400 for meals and entertainment expenses. In order to deduct an expense pursuant to section 162(a), petitioner must show that each item was (1) paid or incurred during the taxable year, (2)

for carrying on any trade or business, (3) an expense, (4) a necessary expense, and (5) an ordinary expense.  See Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 352 (1971).  In addition to the requirements of section 162(a), petitioner must also satisfy the substantiation requirements of section 274(d) with respect to travel, meals and entertainment expenses. Section 274(d) requires the evidence or records substantiating said expenses to show:

> (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, * * * (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility or property * * * *

Petitioner has submitted a copy of his 1994 American Express Card statements, with copies of receipts attached thereto, as proof of his entitlement to deduct travel and meals and entertainment expenses.  Although petitioner's American Express Card statements show the place, amount, and date of a given expense, we have no way of determining which of these expenses petitioner deducted on his 1994 Federal income tax return or whether any of these expenses were germane to the conduct of his consulting business.  Furthermore, the American Express statements do not meet the substantiation requirements of section 274(d) because, among other things, they do not show the business purpose of the expense or, with regard to entertainment expenses, information on the persons entertained.  Since petitioner has

failed to carry his burden, we uphold respondent's disallowance of these expenses.

### III.  Accuracy-Related Penalty under Section 6662(a)

Respondent determined an accuracy-related penalty under section 6662(a) in the amount of $6,921.  Section 6662(a) imposes an accuracy-related penalty of 20 percent on any portion of an underpayment of tax that is attributable to items set forth in section 6662(b).  Section 6662(b)(2) applies section 6662(a) to any portion of an underpayment attributable to a substantial understatement of income tax.  There is a substantial understatement of income tax if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year, or $5,000.  See Sec. 6662(d)(1)(A).  Under section 6662(d)(2), the term "understatement" means the excess of the amount of tax required to be shown on the return over the amount of tax shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2)).  Respondent's determination that there is an accuracy-related penalty due from petitioner under section 6662(a) for the 1994 taxable year is sustained.

To reflect the foregoing,

Decision will be

entered for respondent.